IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 18-35665** |
| **YANCY D. COLLINS** | ) | **Chapter 13** |
| | ) | **Hon. Jacqueline P. Cox** |
| Debtor. | ) | |

### NOTICE OF MOTION

TO:   ALL PARTIES ON THE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on the 15th day of July, 2019 commencing at the hour of 10:30 a.m. or as soon thereafter as counsel may be heard, I shall appear before the Honorable Jacqueline P. Cox in Courtroom 680 of the United State Bankruptcy Court, Dirksen Building, 219 S. Dearborn Street, Chicago, Illinois 60604 and shall then and there present **BYLINE BANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY**, a copy of which was previously mailed. At that time I shall move the Court for the entry of an Order in accordance with the requested relief therein, at which time and place you may appear if you so see fit. A copy of said Motion was previously served upon you.

Byline Bank f/k/a North Community Bank successor-by-merger to Metrobank f/k/a Citizens Community Bank

By: _____
One of its attorneys

Scott H. Kenig
Randall & Kenig LLP
NBC Tower - Suite 2510
455 North Cityfront Plaza
Chicago, Illinois 60611
312/822-0800
ARDC No. 06198729

SKENIG/596963

## CERTIFICATE OF SERVICE

The undersigned, being first duly sworn on oath, deposes and states that he served the foregoing Notice by causing same to be delivered by U.S. Mail to those persons indicated on the attached Service List, on July 8, 2019.

Scott H. Kenig

SKENIG/596963

## SERVICE LIST

David M. Siegel, Esq.
David M. Siegel & Associates
790 Chaddick Drive
Wheeling, Illinois 60090
davidsiegelbk@gmail.com
(Attorneys for Debtor)

Yancy D. Collins
3530 Golfview Drive
Hazel Crest, Illinois 60429
(Debtor)

Patrick Layng, Esq.
U.S. Trustee
219 S. Dearborn Street
Room 873
Chicago, Illinois 60604
(US Trustee)

Tom Vaughn, Esq.
55 E. Monroe Street
Suite 3850
Chicago, IL 60603
(Bankruptcy Trustee)

Bank of America
Bankruptcy Department
PO Box 982284
El Paso, TX 79998-2284

Cmre
3075 E Imperial Hwy
Brea, CA 92821-6733

SKENIG/596963

Cook County Clerk
118 N. Clark St.
Room 112
Chicago, IL 60602-1332


Cook County Treasurer
PO Box 4488
Carol Stream, IL 60197-4488


Radiology Imaging Consultants, SC
75 Remittance Drive
Dept. 1324,
Chicago, IL 60675-1324


Sears/CBNA
P.O. BOX 6282
Sioux Falls, SD 57117-6282


Shirley Collins
224 Kentuck St.
Park Forest, IL 60466-1222


Wells Fargo Hm Mortgage
Po Box 10335
Des Moines, IA 50306-0335

SKENIG/596963

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **Case No. 18 B 35665** |
| **YANCY D. COLLINS** | ) | **Chapter 13** |
| | ) | **Hon. Jacqueline P. Cox** |
| Debtor. | ) | |

### BYLINE BANK'S
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Byline Bank f/k/a North Community Bank successor-by-merger to Metrobank f/k/a Citizens Community Bank ("**Byline**"), by and through its undersigned attorneys, hereby moves the Court, pursuant to Section 362 of the Bankruptcy Code (11 U.S.C. §362) for relief from the automatic stay, and in support of its motion, states as follows:

### I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (G) and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §1409.

### II.    PROCEDURAL BACKGROUND

2.      On December 28, 2018, Yancy D. Collins ("**Debtor**") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (the "**Petition**").  On December 28, 2018, Debtor filed his proposed Chapter 13 plan.  On February 22, 2019, Byline filed an objection to the original proposed Chapter 13 plan.  On June 5, 2019, Debtor filed his amended Chapter 13 Plan (the "**Plan**").

## III.   FACTUAL BACKGROUND

3.      On July 13, 2007, Debtor, among others, executed a promissory note in favor of Byline in the original principal amount of $450,000.00 (the "**Note**"). A copy of the Note is attached hereto as Exhibit A.

4.      The Note is secured by a mortgage (the "**Mortgage**") dated July 13, 2007 against the real property and improvements located at 5141 W. 159th Street, Oak Forest, Illinois (the "**Property**").[1] A copy of the Mortgage is attached hereto as Exhibit B.

5.      Pursuant to the Debtor's amended Schedules and Plan, the value of the Property is $200,000.00.

6.      On March 30, 2011, Citizens Community Bank of Illinois was merged into Metrobank. A copy of the certificate of Merger is attached hereto as Exhibit C.

7.      On June 28, 2013, Metrobank was merged into North Community Bank. A copy of the certificate of Merger is attached hereto as Exhibit D.

8.      Effective February 17, 2015, North Community Bank changed its name to Byline. A copy of the change of name authorization is attached hereto as Exhibit E.

9.      By virtue of the Mortgage, Byline holds secured lien on the Property that is senior and paramount to any other security interest in the Property.

10.     On the Petition date, Debtor owed Byline under the Note the following amounts:

---

[1] The Note is also secured by property located 5621 S. Bishop Street, Chicago, Illinois which is owned by the Debtor's mother. The Debtor has no ownership interest in this property despite the Debtor's continuing misrepresentation to the contrary in Schedule A/B of his amended Schedules..

| | |
|---|---|
| *Principal Balance Due:* | *$358,820.59* |
| *Interest:* | *61,805.35* |
| *Default Interest:* | *56,185.06* |
| *Late Charges:* | *40,455.34* |
| *Legal Fees and costs:* | *15,399.86* |
| *Receiver Fees:* | *16,563.41* |
| *Total Due:* | *$549,229.61* |
| *Per Diem Interest Accruing After Default:* | *$104.65* |

## IV.    LOAN DEFAULTS

### A.    Payment Default

11.    The Note is in default as a result of Debtor's failure to pay the sums due and owing under the Note at maturity on January 13, 2016.

### B.    Real Estate Tax Payment Default

12.    According to the Debtor's proposed Plan, the Debtor owes in excess of $50,000.00 in real estate taxes on the Property.

## V.    LITIGATION

13.    As a result of the default under the Note, on December 12, 2017, Byline filed a complaint to foreclose the Mortgages in the Circuit Court of Cook County, Illinois styled: *Byline Bank v. Yancy D. Collins, et al.*-17 CH 16818 (the "**Foreclosure Action**").

14.    On September 24, 2018, a judgment of foreclosure and sale was entered against the Property in addition to a money judgment against the Debtor in the amount of $533,624.78.

15.    A judicial sale of the Property was scheduled for December 18, 2018 which was subsequently continued to January 22, 2019. In the interim, the Debtor filed this Petition on

December 28, 2018.

16.     As a result of the Petition, Byline has been unable to complete the judicial sale.

## VI.   REQUEST AND BASIS FOR RELIEF

17.     Byline hereby requests that this Court grant it relief from the Automatic Stay so that Byline may proceed with exercising its rights and remedies under the loan documents including, but not limited to, proceeding with the Sale and completing the Foreclosure Action.

18.     Section 362(d) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay:

(1)     for cause, including lack of adequate protection of an interest in property of such party in interest;

(2)     with respect to a stay of an act against property under subsection (a) of this section if-

(A)     the debtor does not have equity in such property; and

(B)     such property is not necessary to an effective reorganization.

19.     In this case, the Court should grant relief from the Automatic Stay on both grounds.

20.     The term "cause" under Section 362(d)(1) means "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding. *In re Martens*, 331 B.R. 395, 398 (B.A.P. 8th Cir. 2005). Relief from the stay is appropriate when a debtor is not making loan payments and there is not sufficient equity in the property to adequately protect the creditor. *Id.* Here, it is clear that the Debtor is not making loan payments to Byline. It is also clear that there is insufficient equity in the Property to adequately protect Byline and, therefore, the Property is not necessary for a successful reorganization by the Debtor.

21.     Furthermore, Byline lacks adequate protection and the Property is deteriorating due to the continuing accrual of interest on the Note, Debtor's failure to pay the real estate taxes, no mortgage payments to Byline and Debtor's failure to provide Byline with additional or replacement liens on other unencumbered assets of the Debtor.

22.     The Debtor's failure to make post-petition mortgage payments by itself is sufficient cause to grant relief from the automatic stay. *In re Jones*, 284 B.R. 92, 98 (Bankr. E.D. Pa. 2002) (failure to make post-petition mortgage payments held to be sufficient cause to grant relief from the automatic stay); *see, also, In re Watson*, 286 B.R. 594, 604 (Bankr. D.N.J. 2002) (debtor's failure to make post-petition payments is sufficient cause to justify granting relief from the automatic stay).

23.     Courts have also recognized that the failure of a mortgagor to pay real estate taxes constitutes cause for lifting the automatic stay for lack of adequate protection. *In re 183 Lorraine Street Associates*, 198 B.R. 16, 23 (E.D.N.Y. 1996); *In re Heinzeroth*, 40 B.R. 518, 520 (Bankr. E.D. Pa. 1984) and *In re Ausherman*, 34 B.R. 393,394 (Bankr. N.D. Ill. 1983).

24.     It would appear that the Debtor is overextended and does not have the resources available to address the needs of the Property such as timely paying the real estate taxes.

25.     Based on the foregoing, this is a case where cause exists for providing relief from the automatic stay based on the lack of adequate protection as well as lack of equity in the Property. The stay should be lifted so that Byline can complete the Foreclosure Action and proceed with a liquidation of the Property.

26.     This Court has the authority to order that Rule 4001(a)(3) is not applicable to the order entered in granting this motion and no cause exists to delay the enforcement and implementation of relief and, therefore, Rule 4001(a)(3) should be waived.

**WHEREFORE**, Byline Bank f/k/a North Community Bank successor-by-merger to Metrobank f/k/a Citizens Community Bank requests that this Court enter an Order (i) modifying the automatic stay to permit Byline to enforce its state law rights and remedies under the Note and Mortgage, (ii) waiving the applicability of Rule 4001(a)(3) and holding such order effective immediately upon its entry; and (iii) granting such other and further relief as may be deemed appropriate.

Respectfully submitted,

Byline Bank f/k/a North Community Bank successor-by-merger to Metrobank f/k/a Citizens Community Bank

By: _____
One of its attorneys

Scott H. Kenig
Randall & Kenig LLP
455 North Cityfront Plaza-Suite 2510
Chicago, Illinois 60611
ARDC # 06198729

# PROMISSORY NOTE

**EXHIBIT**

*A*

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account |
|---|---|---|---|---|---|
| $450,000.00 | 07-13-2007 | 07-13-2012 | 11705805 | 05-5 | 27192 |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Shirley J Collins (SSN: ████-9770)
Yancy D Collins (SSN: ████-6741)
224 Kentucky Street
Park Forest, IL 60466

**Lender:**  Citizens Community Bank of Illinois
3322 South Oak Park Avenue
Berwyn, IL 60402

**Principal Amount: $450,000.00**          **Interest Rate: 8.500%**          **Date of Note: July 13, 2007**

**PROMISE TO PAY.** Shirley J Collins and Yancy D Collins ("Borrower") jointly and severally promise to pay to Citizens Community Bank of Illinois ("Lender"), or order, in lawful money of the United States of America, the principal amount of Four Hundred Fifty Thousand & 00/100 Dollars ($450,000.00), together with interest at the rate of 8.500% per annum on the unpaid principal balance from July 13, 2007, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $3,660.00 each and one irregular last payment estimated at $421,728.14. Borrower's first payment is due August 13, 2007, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on July 13, 2012, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to any late charges; then to any unpaid collection costs; and then to principal. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: Privilege is reserved by the maker to prepay the entire unpaid principal balance with accrued interest thereon, to date of payment on any installment date, upon giving a thirty (30) day written notice to the holder hereof of the intention to make such prepayment, however, a prepayment penalty will be assessed under the following conditions:

(1) If the principal balance of said loan is paid in full within the first year (months 1-12), a prepayment penalty equal to five (5.00%) percent of the planned amortized scheduled balance, calculated as the payoff date, will be assessed.

(2) If the principal balance of said loan is paid in full within the second year (months 13-24), a prepayment penalty equal to four (4.00%) percent of the planned amortized scheduled balance, calculated as of the payoff date, will be assessed.

(3) If the principal balance of said loan is paid in full within the third year (months 25-36), a prepayment penalty equal to three (3.00%) percent of the planned amortized scheduled balance, calculated as of the payoff date, will be assessed.

(4) If the principal balance of said loan is paid in full within the fourth year (months 37-48), prepayment penalty equal to two (2.00%) percent of the planned amortized scheduled balance, calculated as of the payoff date, will be assessed.

(5) If the principal balance of said loan is paid in full within the fifth year (months 49-60), a prepayment penalty equal to one (1.00%) percent of the planned amortized scheduled balance, calculated as of the payoff date, will be assessed.

No prepayment premium will be applicable to any amounts due at maturity, provided that where the maturity shall have been accelerated for default, the above prepayment premium shall be charged if permitted by law.

. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Citizens Community Bank of Illinois, 3322 South Oak Park Avenue Berwyn, IL 60402.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 10.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall

# PROMISSORY NOTE
## (Continued)

Loan No: 11705805                                                                                           Page 2

---

not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $32.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by a First Mortgage and Assignement of Rents on real property commonly known as 5141 159th Street, Oak Forest, IL 60452, 5621 S Bishop Street, Chicago, IL 60636 and 16725 Richmond Avenue #6, Hazel Crest, IL 60429.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Citizens Community Bank of Illinois 3322 South Oak Park Avenue Berwyn, IL 60402.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added

 

Loan No: 11705805

**PROMISSORY NOTE**
(Continued)

Page 3

to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Shirley J Collins

X _____
Yancy D Collins

LASER PRO Lending, Ver. 5.36.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - R. R:\CFR\CFI\LP\D20.FC TR-801 PR-30

RECORDATION REQUESTED BY:
   Citizens Community Bank of
   Illinois
   3322 South Oak Park Avenue
   Berwyn, IL 60402

Doc#:  0720743067 Fee: $48.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/26/2007 09:08 AM  Pg: 1 of 13

WHEN RECORDED MAIL TO:
   Citizens Community Bank of
   Illinois
   3322 South Oak Park Avenue
   Berwyn, IL 60402

SEND TAX NOTICES TO:
   Shirley J Collins
   Yancy D Collins
   224 Kentucky Street
   Park Forest, IL  60466

FOR RECORDER'S USE ONLY

This Mortgage prepared by:
   Cassie Schuppe, Loan Administrative Assistant
   Citizens Community Bank of Illinois
   3322 South Oak Park Avenue
   Berwyn, IL 60402

## MORTGAGE

THIS MORTGAGE dated July 13, 2007, is made and executed between Yancy Collins and Shirley Collins (referred to below as "Grantor") and Citizens Community Bank of Illinois, whose address is 3322 South Oak Park Avenue, Berwyn, IL  60402 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Cook County, State of Illinois:

   LOT 7 (EXCEPT THAT PART FRONTING ON 159TH STREET MEASURING 18.4 FEET ON THE WEST LINE AND 19.8 FEET ON THE EAST LINE) IN BLOCK 2, OAK FOREST HILLS, BEING A SUBDIVISION OF THE NORTHWEST 1/4 OF THE NORTHEAST 1/4 OF  SECTION 21, TOWNSHIP 36 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTHWEST OF CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as  5141 W 159th Street, Oak Forest, IL  60452. The Real Property tax identification number is 28-21-200-004-0000.

CROSS-COLLATERALIZATION.  In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may

Attorneys' Title Guaranty Fund, Inc
1 S Wacker Dr., STE 2400
Chicago, IL 60606 4350

EXHIBIT
B

**MORTGAGE**
**(Continued)**

Loan No: 11705805

Page 2

---

be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or

**MORTGAGE**
**(Continued)**

otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien

Loan No: 11705805

**MORTGAGE**
**(Continued)**

Page 4

arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $25,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's

Lean No: 11705805

**MORTGAGE**
**(Continued)**

Page 5

interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

Loan No: 11705805

**MORTGAGE**
**(Continued)**

Page 6

---

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may

**MORTGAGE**
**(Continued)**

do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not

Loan No: 11705805

**MORTGAGE**
**(Continued)**

Page 8

apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or

**MORTGAGE**
**(Continued)**

Loan No: 11705805

Page 9

available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during

**MORTGAGE**
**(Continued)**

Loan No: 11705805

Page 10

---

Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.**

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**MAXIMUM LIEN. At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $1,450,000.00.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural,

Loan No: 11705805

**MORTGAGE**
**(Continued)**

Page 11

and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Shirley J Collins and Yancy D Collins and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Shirley J Collins and Yancy D Collins.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means Citizens Community Bank of Illinois, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated July 13, 2007, in the original principal amount of $450,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 8.500%. Payments on the Note are to be made in accordance with the following payment schedule: in 59 regular payments of $3,660.00 each and one irregular last payment estimated at $421,728.14. Grantor's first payment is due August 13, 2007, and all subsequent payments are due on the same day of each month after that. Grantor's final payment will be due on July 13, 2012, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The maturity date of the Note is July 13, 2012.

Loan No: 11705805

**MORTGAGE**
**(Continued)**

Page 12

===

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:

x _____
Shirley J Collins

x _____
Yancy D Collins

| Loan No: 11705805 | MORGAGE (Continued) | Page 13 |

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____ _Il_ _____ )
                                  ) SS
COUNTY OF _____ _Cook_ _____ )

On this day before me, the undersigned Notary Public, personally appeared **Shirley J Collins and Yancy D Collins**, to me known to be the individuals described in and who executed the Mortgage, and acknowledged that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ____ _13_ ____ day of ____ _July_ ____ , 20 _07_ .

By _____   Residing at _____

Notary Public in and for the State of ____ _Il_ ____

My commission expires ____ _1-31-10_ ____

"OFFICIAL SEAL"
Mary P. Kumke
Notary Public, State of Illinois
My Commission Exp. 01/31/2010

*State of Illinois*

*Department of Financial and Professional Regulation*

*Number* 3477                                               *Date* March 30, 2011

*Certificate of Merger*

**WHEREAS,** there has been submitted to the Illinois Department of Financial and Professional Regulation ("Department"), Division of Banking, an executed Merger Agreement between Chicago Community Bank, Chicago, Illinois, an Illinois banking corporation, Metropolitan Bank and Trust Company, Chicago, Illinois, an Illinois banking corporation, Community Bank of DuPage, Westmont, Illinois, an Illinois banking corporation, ("Merging Banks") and Citizens Community Bank of Illinois, Berwyn, Illinois, an Illinois banking corporation ("Resulting Bank"), together with evidence of approval of the Merger Agreement by a majority of the entire Board of each of said corporations; and

**WHEREAS,** the Merger Agreement provides that the Merging Banks shall be merged into Resulting Bank in accordance with and pursuant to the provisions of the Illinois Banking Act ("Act") and Resulting Bank shall continue under the charter of Citizens Community Bank of Illinois, Berwyn, Illinois, with the name Metrobank. The main banking premises of the Resulting Bank shall be located at 1110 W. 35th Street, Chicago, Illinois; and

**WHEREAS,** it appears from the evidence furnished to the Department, on the effective date of the merger the Resulting Bank will have the following capital structure on a pro forma basis as of September 30, 2010; 14,820 shares issued and outstanding of common stock, at a par value of $9.00 per share amounting to $1,333,800, surplus amounting to $81,719,627 and undivided profits amounting to $17,240,788; and

**WHEREAS,** the Department is of the opinion and finds that:

(a)   Resulting Bank meets the requirements of the Act for the formation of a new bank at 1110 W. 35th Street, Chicago, Illinois, the proposed main banking premises of Resulting Bank;

(b)   the same matters exist with respect to Resulting Bank which would have been required under Section 10 of the Act for the organization of a new bank;

(c)   the Merger Agreement is fair to all persons affected;

(d)   Resulting Bank will be operated in a safe and sound manner; and

EXHIBIT

C



**WHEREAS,** there has been filed with the Department a copy of the resolutions of the stockholder of the Merging Banks and Resulting Bank, approving the Merger Agreement, in accordance with the provisions of the Act.

**NOW, THEREFORE,** by virtue of the power vested by the Act, the merger of Chicago Community Bank, Metropolitan Bank and Trust Company, Community Bank of DuPage, and Citizens Community Bank of Illinois shall be and is hereby effective upon the terms and provisions of the Merger Agreement as of the close of business on the day and year first above written, and Citizens Community Bank of Illinois is hereby authorized as the Resulting Bank in said merger to continue business as a bank, for a perpetual term unless sooner terminated by due process of law, under the name of Metrobank, pursuant to and subject to all the provisions of the Act.



**IN    TESTIMONY    WHEREOF,**    I    hereunto subscribe my name and affix the seal of my office, the day and year first above written.

DEPARTMENT OF FINANCIAL AND
PROFESSIONAL REGULATION;
BRENT E. ADAMS, SECRETARY

DIVISION OF BANKING

**MANUEL FLORES**
**Acting Director**

## State of Illinois

## Department of Financial and Professional Regulation

*Number* 3517                                    *Date* June 28, 2013

## Certificate of Merger

WHEREAS, there has been submitted to the Illinois Department of Financial and Professional Regulation ("Department"), Division of Banking, an executed Merger Agreement between Plaza Bank, Norridge, Illinois, an Illinois banking corporation, Oswego Community Bank, Oswego, Illinois, an Illinois banking corporation, Metrobank, Chicago, Illinois, an Illinois banking corporation, and Archer Bank, Chicago, Illinois, an Illinois banking corporation ("Merging Banks") and North Community Bank, Chicago, Illinois, an Illinois banking corporation ("Resulting Bank"), together with evidence of approval of the Merger Agreement by a majority of the entire Board of each of said corporations; and

WHEREAS, the Merger Agreement provides that the Merging Banks shall be merged into Resulting Bank in accordance with and pursuant to the provisions of the Illinois Banking Act ("Act") and Resulting Bank shall continue under the charter of North Community Bank, Chicago, Illinois, with the name North Community Bank. The main banking premises of the Resulting Bank shall be located at 3639 North Broadway, Chicago, Illinois; and

WHEREAS, it appears from the evidence furnished to the Department, the Resulting Bank would have had the following capital structure on a pro forma basis as of December 31, 2012; 50,000 shares of issued and outstanding common stock, at a par value of $10.00 per share amounting to $500,000, surplus amounting to $194,478,000 and undivided profits amounting to $(88,900,000) and

WHEREAS, the Department is of the opinion and finds that:

(a)    Resulting Bank meets the requirements of the Act for the formation of a new bank at 3639 North Broadway, Chicago, Illinois, the proposed main banking premises of Resulting Bank;

(b)    the same matters exist with respect to Resulting Bank which would have been required under Section 10 of the Act for the organization of a new bank;

(c)    the Merger Agreement is fair to all persons affected;

(d)    Resulting Bank will be operated in a safe and sound manner; and

EXHIBIT
D



WHEREAS, there has been filed with the Department copies of resolutions by the stockholder of Merging Banks and Resulting Bank, approving the Merger Agreement, in accordance with the provisions of the Act.

NOW, THEREFORE, by virtue of the power vested by the Act, the merger of Plaza Bank, Oswego Community Bank, Metrobank, and Archer Bank with and into North Community Bank shall be and is hereby effective upon the terms and provisions of the Merger Agreement as of the close of business on the day and year first above written, and North Community Bank is hereby authorized as the Resulting Bank in said merger to continue business as a bank, for a perpetual term unless sooner terminated by due process of law, under the name of North Community Bank, pursuant to and subject to all the provisions of the Act.

IN TESTIMONY WHEREOF, I hereunto subscribe my name and affix the seal of my office, the day and year first above written.

DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION;

MANUEL FLORES
Acting Secretary

**Illinois Department of Financial and Professional Regulation**

Division of Banking

BRUCE RAUNER
Governor

JAY STEWART
Acting Secretary

SHEILA SAEGH HENRETTA
Acting Director
Division of Banking

January 21, 2015

Alberto J. Paracchini, President
North Community Bank
180 N. LaSalle Street, Suite 300
Chicago, Illinois 60601

Dear Mr. Paracchini:

This will acknowledge receipt of your letter in which you notified the Illinois Department of Financial and Professional Regulation of a name change for North Community Bank, ("Bank") Chicago, Illinois. According to the notice provided pursuant to Section 13 (a) of the Illinois Banking Act, 205 ILCS 5/13, Bank is changing its name to Byline Bank effective February 17, 2015.

If you have additional questions, please direct any written correspondence to the Illinois Department of Financial and Professional Regulation, Division of Banking, Corporate Activities Section, 5th Floor, 320 West Washington Street, Springfield, Illinois, 62786 or call us at (217) 785-2900.

Sincerely,

Marc A. Edwards, Manager
Bank and Thrift Supervision

MAE:lcp

c:   M. Anthony Lowe, Regional Director
     Federal Deposit Insurance Corporation

EXHIBIT
E